UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN DARNELL RAGLAND, #191565,

    Plaintiff,                    CIVIL ACTION NO. 08-15253

    v.                            DISTRICT JUDGE AVERN COHN

M. RABY, KEITH BERBICK,       MAGISTRATE JUDGE MARK A. RANDON
KEVIN KERR, NICOLAS
SMISSICK, DANIEL ROSE,
ANDREW BELANGER, BRIAN
BOLASH, and ANTHONY
CARIGNAN,

    Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT THE MOTION
FOR SUMMARY JUDGMENT OF DEFENDANTS ROSE,
<u>BELANGER, BOLASH AND CARIGNAN (DKT. NO. 88)</u>**

**I. INTRODUCTION**

    Plaintiff, Kevin Ragland, is currently serving a minimum 20 year sentence following his conviction on charges of armed robbery, felon in possession of a firearm, felony firearm, carrying a concealed weapon and receiving and concealing stolen property. Plaintiff – brandishing a gun – conducted a brazen, daylight robbery of a retail store and then, during an attempted getaway with his accomplice, led police on a high speed car chase before being forcibly stopped by police vehicles. In this lawsuit, Plaintiff alleges that the police officers used excessive force in effectuating the arrest that resulted in his convictions and denied him adequate medical care, by delaying taking him to the hospital for treatment of the injuries he sustained.

Presently before the Court is the motion for summary judgment of Defendant Officers Rose, Belanger, Bolash and Carignan (collectively "the moving Defendants"). The motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and has been fully briefed. (Dkt. Nos. 88 and 92) For the reasons set forth below, the undersigned finds as a matter of law that: (1) none of the moving Defendants used excessive force in carrying out Plaintiff's arrest; (2) Plaintiff did not have a serious medical need; and (3) the moving Defendants are entitled to qualified immunity. Therefore, **IT IS RECOMMENDED** that the moving Defendants' motion be **GRANTED** and Plaintiff's claims against Officers Rose, Belanger, Bolash and Carignan be **DISMISSED WITH PREJUDICE.**

## II. FACTS

### A. The armed robbery of a K-Mart

The following facts are not in dispute.[1] On August 22, 2007, Plaintiff and James Hardy entered a K-Mart store on Greenfield Road in Oak Park, Michigan. Plaintiff and Hardy approached the jewelry counter together. Hardy then exited the store, while Plaintiff made contact with Ms. T, a female K-Mart employee working behind the jewelry counter. Plaintiff told Ms. T that he wanted to purchase five items. He picked out three rings, a bracelet and a necklace. Ms. T placed these items on the counter.

As Ms. T turned around to get a box for the items, Plaintiff went behind the jewelry counter, pointed a gun at her and stated, "This ain't yo shit. Don't take a bullet for K-Mart. Put the jewelry in the bag." As directed, Ms. T placed the jewelry into a plastic bag and handed it to Plaintiff. Plaintiff then ordered her to open the cash register. Ms. T opened the cash register, took out the money, and placed it into the plastic bag with the jewelry. At this point, a male co-worker came

---

[1] Plaintiff pled no contest to all of the charges listed in the introduction.

running up to the counter. Plaintiff pointed the gun at him and left the store. The co-worker followed Plaintiff outside and saw Plaintiff get into a maroon colored minivan driven by Hardy. He watched the vehicle exit the parking lot and travel southbound on Greenfield Road and then called 911 to advise the dispatcher of the situation.

In response to the emergency call, Defendant Officer Bolash was dispatched to southbound Greenfield Road to look for a "maroon minivan occupied by a black male wearing all black with a black hat, armed with a black service revolver, just robbed K-Mart jewelry counter." Officer Bolash located a maroon minivan near Greenfield and Nine Mile Road and observed the vehicle had two occupants. He radioed his dispatcher and learned that the two suspects were wanted and the vehicle they were driving had been reported stolen.

### B. The police chase

Officer Bolash followed the vehicle and waited for a backup unit. After observing a marked Southfield Police Department vehicle, Officer Bolash notified the vehicle, and the Southfield unit also began to follow the minivan. Officer Bolash maneuvered his vehicle approximately one car length behind the minivan and activated his overhead lights and siren. However, Plaintiff's vehicle made no attempt to stop and began to accelerate to 35 mph in a 30 mph zone. During the pursuit, the minivan completely disregarded a stop sign at Northwestern Highway, nearly striking an oncoming vehicle.

Plaintiff's vehicle proceeded westbound on Northwestern Highway at speeds of 55 mph in a 40 mph zone. At the intersection of Nine Mile Road and Northwestern Highway, an unmarked Oak Park unit approached from eastbound Nine Mile Road and several marked Southfield unit's approached from westbound Nine Mile Road, all with their overhead lights and sirens activated. As

Plaintiff's vehicle entered the intersection, it attempted to maneuver through the oncoming patrol cars and other civilian vehicles. The minivan was struck by a marked Oak Park police vehicle, yet did not completely stop. Eventually, the minivan was forcibly stopped after it was struck, again, on the driver's side door by a marked Southfield police vehicle.

All of the officers exited their vehicles and approached the minivan. The officers ordered Plaintiff and Hardy to show their hands. Hardy immediately complied with this order; Plaintiff, by his own admission, had to be told at least twice before obeying. (Dkt. No. 88, Ex. K, Deposition transcript, p. 37) Plaintiff also admits that he had his gun with him in the car, but denies reaching for it or grabbing it. *Id.* at 36. Plaintiff and Hardy were then physically removed from the vehicle and taken to the ground. At this juncture, Plaintiff and the moving Defendants' versions of what happened next differ markedly.

### C. Plaintiff's version of the arrest

Plaintiff testified during his deposition that, after being pulled from the minivan, he was hit in his face, head, back, ribs and that his ankle was forcibly twisted. *Id.* at 45. He stated that he was slapped, punched, kicked and hit with a billy club. *Id.* Plaintiff also claims that while being assaulted one or more of the officers, who were Caucasian, referred to him in racially disparaging terms. *Id*. at 60-61.

As it relates to the specific conduct of the moving Defendants during the arrest, Plaintiff testified that Officer Rose *did not* hit him. *Id*. at 56, line 12. In addition, when asked to name the officers that did hit him, Plaintiff did not name Officer Belanger – other than to subsequently indicate his belief that Officer Belanger had to be involved because he is named in Plaintiff's

-4-

complaint. *Id.* at 55, 57.[2] Plaintiff did not testify that Officer Carignan, the booking officer, was in any way involved with his arrest.

As to Officer Bolash, Plaintiff responded to questions propounded by counsel at his deposition as follows:

> Q. Okay. You told me two officers that your – you think hit you or punched you or kicked you. You told me their names [Raby and Berbick]. Do you know any of the other names of the officers?
>
> A. Yeah. Mr. Bolash. Bolish.
>
> Q. Bolash? Okay. And what did he do to you?
>
> A. I believe he hit me in my back, also.
>
> MR. GILLOOLY: Do you believe?
>
> THE WITNESS: Yes.
>
> MR. GILLOOLY: Are you guessing or [do] you know?
>
> THE WITNESS: I'm – I'm guessing now.
>
> MR. GILLOOLY: Okay. Don't guess. None of us want you to guess. Okay?
>
> THE WITNESS: Okay. No, he hit me with a closed fist to my head. Yeah.

*Id.* at 53. The entire incident – from the time officer Bolash approached the location of Greenfield and Nine Mile roads through the pursuit of the minivan and arrest of Plaintiff – was recorded on the in-car dash camera of Officer Bolash's police vehicle. (Dkt. No. 93, Ex. 1) The video does not show Plaintiff being kicked or hit with a billy club.

---

[2] Plaintiff did name the following officers that he claims physically assaulted him in some way during the arrest: Raby, Berbick and Bolash. Of these officers, only Bolash is one of the moving Defendants.

**B. The moving Defendants' version of the arrest**

The moving Defendants contend that Plaintiff's claim of a brutal physical assault is simply untrue. They point out that the in-car video from Officer Bolash's police vehicle demonstrates that the only "force" applied to Plaintiff by Officer Bolash was the minimal amount necessary to assist in subduing him, in light of the fact that Plaintiff was suspected of participating in an armed robbery and was a passenger in a getaway vehicle that led police on a high speed chase. (Dkt. No. 88, p. 10) The moving Defendants also maintain that Officers Rose and Carignan were not present at the scene of Plaintiff's arrest.[3] And, Officer Belanger "had absolutely no contact with Plaintiff during his arrest," but was, instead, only involved in the apprehension of Hardy on the driver's side of the minivan. *Id.*

The moving Defendants acknowledge that the video shows Plaintiff being punched in the area of his head on two occasions by an unidentified officer. However, that officer is not Officer Bolash, whose affidavit identifies himself as assisting in the arrest of Plaintiff – but not the officer striking Plaintiff in the area of his head.[4]

**C. Post arrest allegations of inadequate (delayed) medical treatment**

After his arrest, Plaintiff was taken to the Oak Park Jail. There, Plaintiff alleges that he repeatedly requested medical attention for the injuries he received during the arrest, but Defendant Officer Carignan

---

[3] This is consistent with Plaintiff's deposition testimony.

[4] The moving Defendants argue that Plaintiff may have been punched by the unidentified officer because he refused to show his hands after one of the officers yelled "gun." In his deposition testimony, Plaintiff indicated that although his hands were initially at his side, he was not ordered to show his hands. Rather, his hands were forcibly brought behind his back. (Dkt. No. 88, Ex. K, p. 42-44) Plaintiff further claims that he was struck after being cuffed – rendering those blows gratuitous. However, because none of the moving Defendants hit Plaintiff in the area of his head (or anywhere else for that matter) the undersigned makes no finding on whether Plaintiff should be permitted to proceed against the unidentified officer under the Fourth Amendment.

refused telling him "all I have for you —--- is a pine box." (Dkt. No. 27, ¶¶ 13, 14) Plaintiff further alleges that he had to wait five hours before being transported to Providence Hospital. The medical staff at the hospital took x-rays and conducted a full examination of Plaintiff's self-reported injuries. (Dkt. No. 61, Ex. D) However, Plaintiff was diagnosed only with "bruised ribs" – no cuts, bleeding, broken or fractured bones, internal injuries or other serious injuries of any kind were identified or treated. After providing ice for his bruised ribs, Plaintiff was released from the hospital, and returned to jail, within a few hours of his arrival. *Id.*

### III. ANALYSIS

#### *A. Standard of Review*

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c)(2).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 547, 587 (1986); *see also B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried

his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S. Ct. 1575, 1592 (1968).

### B. The Court may properly consider the DVD in-car recording in deciding the motion for summary disposition

"Summary judgment may be based on any evidence which would be admissible at trial." *United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994). This includes a DVD if properly authenticated by an accompanying affidavit. *Scott v. Harris,* 550 U.S. 372 (2007). Authentication is a "condition precedent to admissibility" under Fed. R. Evid. 901(a).

Plaintiff correctly pointed out in his response to the motion that the moving Defendants had not properly authenticated the DVD, and that the DVD provided was blank and should not be considered. However, in response, Officer Bolash submitted an authenticating affidavit (Dkt. No. 93, Ex. 2) and working DVD. *Id.* at Ex. 1. The DVD is a complete, apparently unedited, recording of the events leading up to and including Plaintiff's arrest; Officer Bolash attests to its accurate depiction of the events described herein. As such, the undersigned finds that the DVD may properly be considered by the Court in deciding the motion of the moving Defendants.

### C. As a matter of law, none of the moving Defendants used excessive force

Plaintiff's claim of excessive force in this case is analyzed under the Fourth Amendment. *Aldini v. Johnson*, 609 F.3d 858, 867 (6th Cir. 2010)("the dividing line between the Fourth and Fourteenth Amendment zones of protection" is the probable-cause hearing). "Under the Fourth Amendment standard, courts must determine whether a particular use of force is reasonable based on 'the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.' This reasonableness inquiry is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Totman v. Louisville Jefferson County Metro Govt.*, No. 09-5764, 2010 WL 3245534 *8 (6th Cir. Aug. 13, 2010) (citations omitted). Further, in evaluating whether or not the force used was reasonable, courts must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001) (citations omitted).

In this case, as evident from the in-car video, the only moving Defendant engaged in assisting with the arrest of Plaintiff was Officer Bolash – Plaintiff concedes that Officers Carignan and Rose were not involved and Officer Belanger only assisted in the arrest of Hardy. The video shows Officer Bolash exit his patrol vehicle and first go to the driver's side of the minivan. Officer Bolash then moves to the passenger side of the vehicle to assist two other officers subdue Plaintiff. Officer Bolash is positioned toward the lower half of Plaintiff's body and is not seen kicking, punching or assaulting Plaintiff in any way. Rather, the minimal force used by Officer Bolash was reasonable and necessary to secure Plaintiff in light of Plaintiff's suspected armed robbery, dangerous attempt

to evade capture, and failure to immediately follow police directives. The entire incident – from the time Plaintiff was pulled from the minivan and brought to the ground until he is secured, lifted up and placed against the police car – lasts *less* than one minute. Under these circumstances, no rational juror could find that Officer Bolash used excessive force against Plaintiff under the Fourth Amendment, and Plaintiff's claims against Officer Bolash should be dismissed. Furthermore, Plaintiff's excessive force claims against the remaining moving Defendants should also be dismissed because they were not involved with his arrest.

**D. As a matter of law Plaintiff's medical needs were not objectively serious**

In order to sustain his claim against Defendant Officer Carignan (the booking officer) or any of the moving Defendants for inadequate – delayed[5] – medical care under the Eighth Amendment, Plaintiff must first demonstrate that they were deliberately indifferent to his "objectively serious" medical needs at the time he was in their custody. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In *Blackmore v. Kalamazoo County*, 390 F.3d 890 (6th Cir. 2004), the Sixth Circuit articulated the standard for an "objectively serious" medical need as follows:

> Most other circuits hold that a medical need is objectively serious if it is "one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." [citations omitted] As the Eleventh Circuit observed, "[c]ases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem [whereas] delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute a [constitutional] violation." [citation omitted].

---

[5] Plaintiff does not challenge the quality of treatment he received at Providence Hospital only the delay in transporting him there.

> In unpublished opinions, this Court has evaluated the seriousness of a prisoner's medical needs by this "obviousness" approach. See, e.g., *Taylor v. Franklin County*, 104 Fed.Appx. 531, 2004 WL 1595203, at *6 (6th Cir. July 14, 2004) ("Such obvious signs of recurring incontinence and debilitating immobility were clear symptoms of a serious problem, even if Defendants did not [choose] to believe Plaintiff."); *Alexander v. Jones*, 234 F.3d 1267, 2000 WL 1562841, at *1 (6th Cir. Oct.12, 2000) (holding that the plaintiff's glaucoma "was not so obvious that a lay person would recognize it"); *Friend v. Rees*, 779 F.2d 50, 1985 WL 13825, at *3 (6th Cir. Oct.1, 1985) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."). In addition, lower courts within this Circuit have adopted this obviousness rule.

*Id.* at 896-897.

Plaintiff's amended complaint allegations do not meet the "objectively serious" standard. Notwithstanding Plaintiff's protestations, one could hardly imagine a circumstance in which bruised ribs are an obviously serious injury.[6] Plaintiff had no broken bones, was not bleeding or showing any outward signs of having an objectively serious medical need. Nor were his verbal complaints of general pain sufficient to create a serious medical need (as would be the case where a prisoner complains of chest pains and tightness symptomatic of a heart attack, etc.). Plaintiff was later taken to the hospital and released within a few hours, after being treated for his bruised ribs with ice. And, Plaintiff's need to take pain medication after the fact does not change the analysis. Plaintiff's

---

[6] Plaintiff also claims that while later imprisoned with the MDOC, he was diagnosed with back and ankle "trauma." (Dkt. No. 45, p. 4) However, even this subsequent diagnosis does not change the analysis.

medical need was not objectively serious and his Eighth Amendment claim should be dismissed in its entirety as to all defendants.[7]

**IV. CONCLUSION**

For the reasons stated above, **IT IS RECOMMENDED** that the moving Defendants' motion for summary judgment be **GRANTED** and Plaintiff's claims against Officers Rose, Belanger, Bolash and Carignan be **DISMISSED WITH PREJUDICE.**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless,

---

[7] While the undersigned finds, in the alternative, that Plaintiff's claims are also barred by qualified immunity, an analysis of that defense is unnecessary in light of the foregoing.

by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: November 17, 2010

### CERTIFICATE OF SERVICE

*I hereby certify that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 17, 2010.*

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
*(313)234-5542*

**Copies mailed to:**
**Kevin Ragland, #191565**

***Cotton Correctional Facility***
***3510 N Elm Street***
***Jackson, MI 49201***